UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. _____

GRAYDON J. HAUSER and LORA
SUE HAUSER,
                          Plaintiffs,

vs.

MARINER POINTE CONDOMINIUM
ASSOCIATION, INC.,
                          Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL
## (INJUNCTIVE RELIEF SOUGHT)

COME NOW Plaintiff GRAYDON J. "GRADY" HAUSER and Plaintiff

LORA SUE HAUSER, by and through undersigned counsel, and sue the

Defendant, MARINER POINTE CONDOMINIUM ASSOCIATION, INC., stating:

## I.  NATURE OF THE ACTION

1.      This is a civil action brought pursuant to the federal Fair Housing Act

["FHA"], 42 U.S.C. §§ 3601, *et seq.*, and 42 U.S.C. § 1982 for damages and injuries

arising  from  the  Defendant's,  MARINER  POINTE  CONDOMINIUM

ASSOCIATION, INC.'s,  unlawful discrimination against Plaintiff LORA SUE

HAUSER, a person with disabilities, and against Plaintiff GRAYDON HAUSER, a

person associated with a person with disabilities.

## II.  PARTIES

2.     Plaintiff LORA SUE HAUSER ["MRS. HAUSER"], a resident and citizen of Lee County, Florida, is a 71-year old individual with a disability that qualifies her for the protections of the FHA.

3.     MRS. HAUSER resides at 760 Sextant Drive, Unit 642, Sanibel Island, Florida 33957.

4.     Plaintiff GRAYDON "GRADY" J. HAUSER ["MR. HAUSER" and "Plaintiffs" when collectively referred to with MRS. HAUSER] is MRS. HAUSER's husband and resides, and at all times relevant resided, with MRS. HAUSER at 760 Sextant Drive, Unit 642, Sanibel Island, Florida  33957.

5.     Defendant, MARINER POINTE CONDOMINIUM ASSOCIATION, INC. [hereafter "MARINER POINTE" and/or "Association" and/or "Defendant"], is a Florida non-profit corporation, organized and operating pursuant to Chapter 720, Florida Statutes.

6.     MARINER POINTE's principal and mailing addresses are 3434 Hancock Bridge Pkwy, Suite 306, North Fort Myers, Florida 33903.

7.     MARINER POINTE is responsible for administering and governing the MARINER POINTE Community pursuant to MARINER POINTE's Declaration, Articles of Incorporation, By-Laws, Rules and Regulations, and amendments thereto. It also sets, approves, and enforces the policies, rules, regulations, practices, permits, and "Use Agreements" for the MARINER POINTE

Community.

8.    The housing units governed by MARINER POINTE are "dwellings" within the meaning of 42 U.S.C. § 3602(b) of the FHA.

9.    MARINER POINTE is subject to the anti-discrimination provisions of the FHA.

### III.  JURISDICTION AND VENUE

10.    This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § §§ 3601, *et seq.*, and 42 U.S.C. § 3613.

11.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because the parties reside in this District, Defendant's principal place of business is in Lee County, and the events giving rise to the Plaintiffs' claims arose in Lee County which is within the Fort Myers Division of the Middle District of Florida.

12.    Any and all conditions precedent to the bringing of this action by Plaintiffs have occurred, or their performance has been waived by Defendant.

### IV.  FACTUAL ALLEGATIONS

13.    MR. and MRS. HAUSER own and at all times material hereto, have resided at 760 Sextant Drive, Unit 642, Sanibel Island, Florida 33957, a condominium located within the MARINER POINTE Community.

14.    Ownership of a condominium unit in the MARINER POINTE Community includes one designated, dedicated parking space and access to guest parking on

a first come, first served basis. The Plaintiffs' condominium Unit includes an assigned parking space, demarcated with their corresponding unit number on a concrete bumper block (aka parking bumper): 642.

15.    For the last twenty-five (25) or more years, MRS. HAUSER has suffered from severe and frequently debilitating osteoarthritis, and more recently a failed knee replacement, which substantially impair her ability to ambulate without pain or great discomfort, or to carry heavy objects.

16.    At all times material hereto, MRS. HAUSER suffered from and still suffers from physical impairments that substantially limit one or more of her major life activities. Accordingly, MRS. HAUSER has a "handicap" pursuant to 42 U.S.C. § 3602(h), FHA.

17.    MRS. HAUSER relies upon an electric mobility scooter ["the scooter" or "mobility scooter"], a version of which she first began to use in or around 2017. The scooter assists MRS. HAUSER in coping with her disabilities.

18.    The scooter is not a recreational device or a toy, and weighs approximately 242 lbs.

19.    The scooter travels with MRS. HASUER by way of a removable travel rack ["the rack"] which attaches by a hitch to the back of the Plaintiffs' car. (Rack photo is marked and incorporated as "Exhibit 14.")

20.    The rack is 50" long, 28" wide, 6" high, and weighs approximately 70 lbs.

21.     Prior to MR. and MRS. HAUSER's purchase of Unit 642, they vacationed in the MARINER POINTE Community on multiple occasions.

22.     Each time, the Association gave Plaintiffs an assigned parking space and instructed them to park the scooter directly in front of the outside of the bumper block on the opposite side of their vehicle. (Photo of scooter parked outside of bumper block, opposite of vehicle is marked and incorporated as "Exhibit 1.")

23.     When parked in this fashion, the scooter does not impede any walkway or roadway, does not impact vegetation or access to adjacent vehicles, nor does it impede access or egress to any stairway, railing, parking space, door, A/C unit, window, vehicle, or any other feature of the Community. (*Id.*)

24.     After purchasing Unit 642, the Plaintiffs were again instructed by the Association to park MRS. HAUSER's scooter exactly as the Association instructed when the Plaintiffs were vacationing guests:  directly in front of the outside of the bumper block on the opposite side of their vehicle, only now at their dedicated parking space 642.

25.     In or around May of 2023, the Plaintiffs, as a reasonable accommodation of MRS. HAUSER's disability-related need for a mobility scooter, requested access to the electrical outlets in the common areas of the MARINER POINTE Community to charge her scooter.

26.     In June of 2023 the Association, by and through its property manager agent

Adam Bondi, sent MR. HAUSER an email containing a "NON-EXCLUSIVE AND TEMPORARTY [sic] ELECTRICAL OUTLET USE AGREEMENT" which the ASSOCIATION directed the Plaintiffs to agree to and sign.  (6/14/2023 Bondi email is marked and incorporated herein as "Exhibit 2";[1] "NON-EXCLUSION AND TEMPORARTY [sic] ELECTRICAL OUTLET USE AGREEMENT" is marked and attached as "Exhibit 3" and hereafter referred to as "Shocking Outlet Use Agreement.")

27.     The Shocking Outlet Use Agreement defines "Owners" as "Graydon J. and Lora Sue Hauser" (i.e., the Plaintiffs), "Unit" as "Unit 642" (i.e., Plaintiffs' Unit), and "Association" as "Mariner Pointe Condominium Association, Inc." (i.e., the Defendant) and threatens (emphasis added):

> Owners failure to comply with this Agreement and/or failure to pay said fees shall result in an **immediate and permanent termination of Owners'…the right to park the scooter in parking space 642 (and Owners' use of an Association's guest parking space).**

(Exhibit 3.)

28.     Plaintiffs paid the $25.00 charging fee requested, and abided by the request to charge the scooter only at "the Designated Outlet."

29.     Plaintiffs declined to sign the Shocking Outlet Use Agreement however

---

[1]The email also refers to "handrail installation," however handrails are not a part of this litigation.

because they are unable to comply with the demand that MRS. HAUSER's scooter be parked either inside their Unit or inside parking space 642 while their car is parked in a guest parking space.

30.     The guest parking space closest to space 642 is more than 88 feet away, too far for MRS. HAUSER to walk from the car to her unit without considerable pain and difficulty. (Photo of Guest Parking Location is marked and incorporated as "Exhibit 4.")

31.     The Plaintiffs' Unit (Unit 642) is located on the upper floor of a bi-level building. There are no ramps or elevators, and Plaintiffs arranged and paid for installation of handrails to assist MRS. HAUSER in using the stairs and walkway to and from the Plaintiffs' Unit.  (See Exhibit 2.)

32.     Travelling between parking space 642 and Unit 642 is challenging for MRS. HAUSER because transversing even that relatively short distance requires significant exertion by MRS. HAUSER and causes her severe pain.

33.     It is absurd to even suggest that the 242 lbs. scooter can be parked inside Unit 642 given the absence of a ramp or elevator, as even a non-disabled, Olympian bench-presser would have difficulty carrying it to/from the Plaintiffs' Unit.

34.     It is also unreasonable to demand that the scooter be parked inside space 642 while the Plaintiffs' car is parked in an available guest space, the closest of

which is more than 88 feet away and the furthest of which is more than 200 feet away.

35.     Despite her disabilities, MRS. HAUSER can and does drive the Plaintiffs' car.

36.     It is unreasonable and unnecessary to insist that MRS. HAUSER park her car an additional distance of up to 200 feet away from her scooter, needlessly increasing MRS. HAUSER's painful journey to and from her Unit. (See Exhibit 4 [photo].)

37.     It is further unreasonable and unnecessary to insist that the scooter be parked inside parking space 642 as opposed to where it has been parked without incident historically: immediately outside of the parking bumper, where the scooter does not does not impact vegetation or access to adjacent vehicles, nor does it impede access to any walkway, roadway, stairway, railing, parking space, door, A/C unit, window, vehicle, or any other feature of the Community. (See Exhibit 1 [photo].)

38.     Moreover, there have been no complaints or incidents with the scooter parked on the outside of a parking bumper while the Plaintiffs' car is parked in an assigned parking space, either during the times the Plaintiffs vacationed at MARINER POINTE as guests or while living at MARINER POINTE as owners.

39.     Given the slant of the parking bumpers, there is ample space for the scooter

to be parked in a non-obstructing manner. (See *id.*)

40.     Intimidated by the Shocking Outlet Use Agreement itself, its terms, the demand to sign it, and the threat of termination of not only the right to park the mobility scooter anywhere at MARINER POINTE but the right to park **any** car in **any** guest space at MARINER POINTE (see Exhibit 3), the Plaintiffs retained counsel who sent a letter to the Association on their behalf, requesting the disability-related reasonable accommodation of being allowed to continue to park the scooter outside of the bumper block of parking space 642, leaving room for their car inside their assigned parking space, as they had done historically, or, in the alternative, being granted a second, dedicated parking space adjacent to parking space 642 (one for their vehicle and one for the scooter). (7/11/2023 Attorney Holley letter is marked and incorporated herein as "Exhibit 5.")

41.      Proffered with Attorney Holley's letter was the photograph showing the scooter parked on the outside of the parking bumper and the Plaintiffs' vehicle on the inside of parking space 642 (which has already been incorporated hereto as Exhibit 1) and MRS. HAUSER's handicapped parking placard. (See Exhibit 5.)

42.     The Association, by and through its attorney agent Robert Cooper, denied Plaintiffs' request. (8/11/2023 Association Denial Letter is marked and incorporated herein as "Exhibit 6.")

43.     The Association insisted that the parking arrangement dictated in the

Shocking Outlet Use Agreement was reasonable "since Mr. Hauser is not disabled," and completely missed the onus of Plaintiffs' request to park the scooter outside of the parking bumper while their car is parked inside the space, by instead disagreeing that the Plaintiffs' photograph (Exhibit 1) was "representative of how Mrs. Hauser typically parks her scooter," proffering a photo of the scooter parked elsewhere which the Association maintained could be "an obstruction to the common walkways used by other owners and residents." (*Id*; misleading Association photo is marked and incorporated as "Exhibit 7.")

44.   The photograph included with the Association's attorney's letter is misleading. The photograph was taken on an occasion when Plaintiffs were required to temporarily relocate the scooter from its resting space (outside of the parking bumper of space 642) because of construction or an impending delivery. (Exemplar photo of "Mr. Cool" delivery truck parking is marked and incorporated as Exhibit 8.")

45.   The MARINER POINTE Community, as well as the entire Sanibel Island Community, are still recovering from the devastation of Hurricane Ian which made landfall in Lee County approximately a year ago (on September 28, 2022) as a Category 4 hurricane. Construction as part of on-going recovery efforts at MARINER POINTE Community results in frequent requests by MARINER POINTE for residents  to  relocate their vehicles and personal equipment, all of

which the Plaintiffs have readily cooperated with.

46.     For example, on August 10, 2023, Plaintiffs received a text request from MARINER POINTE Maintenance advising: "*I'm going to be grinding the steps for prepping near your car and scooter. I don't want to get concrete dust all over. Do you mind moving both today?*" and sometime thereafter also received a notice from MARINER POINTE Property Manager agent Bondi that during the month of September 2023, corrective concrete drilling would be ongoing. (8/10/2023 Text Message is marked and incorporated as "Exhibit 9"; 9/2023 Concrete Core Drilling Notice is marked and incorporated as "Exhibit 10.")

47.     The photo included with the Association's Denial Letter and relied upon as the Association's "proof" of the unreasonableness of the accommodation requested is not only disingenuous, but irrelevant to the actual request made (i.e., to park the scooter outside of parking space bumper 642), as the Association's photo obviously (and illogically) displays the scooter parked elsewhere. (See Exhibit 7 [photo].)

48.     Hoping to minimize legal costs, the Plaintiffs endeavored to clarify the misrepresentation and resolve the matter by communicating directly with the Association and, to that end, sent an email on August 20, 2023, to the Association's Board Members explaining that the photograph proffered by the Association's attorney [Exhibit 7] was misleading as it did not represent the "typical" place the

scooter was parked [*cf.* Exhibit 1], and that it was an outright lie to say otherwise because the scooter was always parked outside the parking bumper of parking space 642 unless Plaintiffs received a text or other communication from the Association to move the scooter because of a special circumstance such as construction. (8/20/2023 Email is marked and incorporated herein as "Exhibit 11.")

49.     Plaintiffs also re-asserted their request for the reasonable accommodation of MRS. HAUSER's disability-related need for access to her mobility scooter by being permitted to park the scooter as they had done historically, further explaining the nature and extent of MRS. HAUSER's disability and the hardship the denial placed on her, and further reassuring through another photo that the scooter, when parked in front of the parking bumper of space 642, does not create an obstruction. (*Id.*)

50.     Having not received any response to that email, on August 30, 2023, as a professional courtesy, Attorney Holley forwarded the email to the Association's attorney, emphasizing that the scooter, when parked outside of parking bumper 642 "does <u>not</u> cause any interference with any other guest and the one photo [the Association's attorney] attached was a single occurrence." (8/30/2023 Attorney Holley Forwarding Email is marked and attached as "Exhibit 12.")

51.     On August 31, 2023, the Association's Attorney replied: "The [Association's]

positions…remain unchanged. There is no misunderstanding on the part of the Association." (8/31/2023 Association Attorney Cooper Reply is marked and attached as "Exhibit 13.")

52.     In the interim, the Plaintiffs' also requested, as part of their request for the reasonable accommodation of MRS. HAUSER's disability-related need for use of and ready access to her mobility scooter, to store the scooter travel rack with the bicycles and watercraft (kayaks and paddleboards) stored in the Association-designated common area or in some other common area designated by the Association. (See Exhibit 14 [rack photo].)

53.     Plaintiffs have been storing the rack off-site of their MARINER POINTE home at a friend's garage three miles away.

54.     When the scooter malfunctioned, the time and logistics of traveling to and from the friend's garage to retrieve the rack resulted in MRS. HAUSER being left stranded on a 95-degree day.

55.     At 50" long, 28" wide, 6" high, and 70 pounds, the travel rack is significantly smaller than the average kayak which is typically 162" long, 34" wide, 28" high, and weighs anywhere from 30 lbs. (single) to 65 lbs. (tandem) to over 120 lbs. (fishing kayak).

56.     Without explanation or discussion with the Plaintiffs, the Association also denied Plaintiffs' request regarding storage of the scooter rack.

57.     In or around the first two weeks of September 2023, MRS. HAUSER was riding the scooter near the Community's non-functioning pool checking on the progress of construction repairs. While MRS. HAUSER was at the far end of the pool, the Association's President's wife came out of her and the President's Unit and loudly and publicly announced that MRS. HAUSER was "not allowed to ride on the walking path."

58.     Upon information and belief, the President's wife's conduct, hostility, and ignorance as to MRS. HAUSER's right to operate the scooter upon any pedestrian walkway is culled and encouraged by the Association.

59.     The Association's President's wife's behavior and comment is exemplar of the hostile and misinformed environment MRS. HAUSER has experienced while operating her scooter in and around the MARINER POINTE Community.

60.     On or around October 2, 2023, Vesta Property Services "Acting as Agent for MARINER POINTE," mailed Plaintiffs a letter dated October 2, 2023, denominated "*Courtesy Notice of Violation*" with a photograph of their car parked in parking space Unit 642 and MRS. HAUSER's mobility scooter parked on the outside of the parking bumper (as Plaintiffs have historically parked) stating:

> MOTORIZED VEHICLES: Only TWO (2) private passenger vehicles per unit may be parked on the premises. There is ONE (1) parking space designated for each unit. Vehicles must fit into the designated space without impacting vegetation or access to adjacent vehicle…

**Unauthorized, unlicensed vehicles or those that cannot operate on their own power will be towed at the vehicle owner's expense.**

…

In order to preserve the integrity and appearance of the community please take in the following action:

**You must park your second vehicle in your assigned space or in a guest space if one is available. Vehicles must fit in the designated space assigned to your unit, or in a guest space**…If the violation is not corrected, or contact is not made within **14 days** of this letter, the Association will continue with enforcement action…the Association has the right to impose a fine which will accrue at a rate of up to $100 per day (to a maximum of $1,000.00. If fines go unpaid the amounts owed can be turned over to a third-party collection agency or attorney…Fines reaching $1,000.00 can also result in a lien on the subject property and ultimately foreclosure…If the violation remains uncorrected the association can seek Pre-Suit Mediation, followed by a lawsuit…

(10/2/2023 Violation Notice is marked and incorporated as "Exhibit 15")(emphasis in original).

61.     Under Florida law, the scooter is not a motor vehicle. Fla. Stat. §320.01(1)(a).

62.     Under Florida law, the scooter is an "electric personal assistive mobility device." Fla. Stat. §316.003(24).

63.     MARINER POINTE may not count the scooter as a "private passenger vehicle."

64.     Counting MRS. HAUSER's medically-necessary mobility assistance scooter as a vehicle deprives Plaintiffs the right to have a second automobile (or other motor vehicle) and thus treats Plaintiffs differently than households in the Community that do not have persons with disabilities that rely upon mobility assistance scooters.

15

65.     MARINER POINTE's threats to remove MRS. HAUSER's means of mobility, and to fine and file a lawsuit against the Plaintiffs, make it clear that persons with disabilities that rely upon mobility assistance scooters and the partners of persons with disabilities that rely upon mobility assistance scooters do not enjoy the same right to own vehicles as non-disabled residents.

66.     At all times material, MARINER POINTE was aware of MRS. HAUSER's disability and that her mobility scooter is and was necessary to mitigate the symptoms of her disability.

67.     MARINER POINTE's actions were, and continue to be, intentional, deliberate, willful, and in total and reckless disregard of Plaintiffs' rights and show total indifference to MRS. HAUSER's disability.

68.     MARINER POINTE's refusal to accommodate either Plaintiffs' request to park the mobility scooter where it has been parked historically (i.e., on the outside of the parking bumper for parking space 642) or to store the scooter travel rack with the bicycles and watercraft (kayaks and paddleboards) or at some other common area designated by the Association, violated the FHA.

69.     Plaintiffs have been injured by MARINER POINTE's discriminatory housing practices and therefore qualify as "aggrieved person(s)" pursuant to 42 U.S.C. § 3602(i).

70.     As a direct and proximate result of MARINER POINTE's conduct, MRS. HAUSER has incurred and continues to incur attorney's fees, and has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

71.     As a direct and proximate result of MARINER POINTE's conduct, MR. HAUSER has incurred and continues to incur attorney's fees, and has suffered and continues to suffer irreparable loss and injury including, but not limited to, loss of his right to equal housing opportunities regardless of association with a person with a disability.

72.     As a direct and proximate result of MARINER POINTE's conduct, Plaintiffs have retained undersigned counsel and are obligated to pay a reasonable fee for their services.

### V. CAUSE OF ACTION

**COUNT 1**
**FAILURE TO REASONABLY ACCOMMODATE**
**(MOBILITY SCOOTER)**

73.     Plaintiffs re-allege and incorporate by reference Paragraphs 1-72 as if fully set forth herein.

74.     MRS. HAUSER is disabled by virtue of a physical impairment which substantially limits one or more of her major life activities, specifically among

them:  walking.

75.    MRS. HAUSER has a disability-related need to use and have ready-access to her mobility scooter and automobile in order to have the same opportunity to use and enjoy her dwelling at MARINER POINTE as any non-disabled resident.

76.    MR. HAUSER is a person associated with a person with a disability.

77.    Plaintiffs requested that MARINER POINTE waive its parking restrictions and allow Plaintiffs to park MRS. HAUSER's mobility scooter on the outside of the parking bumper of parking space 642 as Plaintiffs have done historically so that both Plaintiffs could reside and enjoy their MARINER POINTE residence.

78.    MARINER POINTE does not dispute MRS. HAUSER's disability or disability-related need for use of and access to her mobility scooter. (See Exhibit 2; Exhibit 6, note 1: "Mrs. Hauser's disability is not disputed by the Association.")

79.    MARINER POINTE, fully knowing of MRS. HAUSER's disability-related need to use and have ready-access to her mobility scooter and automobile, refused to waive its parking restrictions and/or policy.

80.    MARINER POINTE had actual knowledge of MRS. HAUSER's disability and disability-related need to use and have ready access to her mobility scooter and automobile.

81.    Defendant had a legal obligation to meaningfully review MRS. HAUSER's request to park her scooter outside of the parking bumper of parking space 642

could be accommodated, which at the very least would have required assessing the parking area, actually contemplating the accommodation request being made, and speaking with MRS. HAUSER rather than sending communications containing false statements and misleading photographs regarding where the scooter had once been seen parked.

82.     Even if the scooter had been parked every day continuously for a year in the location depicted in the Association's attorney's photograph, same has absolutely no bearing on the Plaintiffs' request to park the scooter on the outside of the parking bumper of parking space 642.

83.      Defendant made no effort to engage in a good faith dialogue with either Plaintiff regarding their request for reasonable accommodation of the scooter parking.

84.     Accommodating MRS. HAUSER's need to have use of and ready access to her mobility scooter by parking the scooter on the outside of the parking bumper of parking space 642 would not result in substantial physical damage to the property of others.

85.     Accommodating MRS. HAUSER's need to have use of and ready access to her mobility scooter by parking it on the outside of the parking bumper of parking space 642 would not pose an undue financial or administrative burden on MARINER POINTE.

86.    Accommodating MRS. HAUSER's need to have use of and ready access to her mobility scooter by parking it on the outside of the parking bumper of parking space 642 would not fundamentally alter the nature of MARINER POINTE's operations.

87.    MARINER POINTE's actions and conduct constitute a conscious and reckless disregard for Plaintiffs' rights, and show total indifference for MRS. HAUSER's disability.

88.    The foregoing conduct and acts of Defendant constitute discrimination against a person with a disability in violation of 42 U.S.C.§ 3604(f)(3)(B), FHA, by failing to and/or by refusing to make reasonable accommodations in its rules, policies, practices, or services, when such accommodations are necessary to afford Plaintiffs an equal opportunity to use and enjoy their dwelling.

89.    The foregoing conduct and acts of Defendant also constitute discrimination against a person associated with a person with a disability in further violation of the FHA.

90.    As a result of the Defendant's conduct, Plaintiffs have suffered damages.

91.    The discriminatory conduct and actions of Defendant were intentional, willful, and taken in blatant disregard for the Plaintiffs' rights.

92.    As a direct and proximate result of MARINER POINTE's failure to accommodate, MRS. HAUSER has suffered irreparable loss and injury including,

but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

93.     As a direct and proximate result of MARINER POINTE's failure to accommodate, MR. HAUSER has also suffered irreparable loss and injury including, but not limited to, loss of his right to equal housing opportunities regardless of his association with a person with a disability.

WHEREFORE, Plaintiffs GRAYDON J. "GRADY" HAUSER and LORA SUE HAUSER demand judgment against Defendant, MARINER POINTE CONDOMINIUM ASSOCIATION, INC., declaring that the actions of MARINER POINTE violated, *inter alia*, the Fair Housing Amendments Act by discriminating against a person with a disability and a person associated with a person with a disability, and awarding Plaintiffs compensatory and punitive damages and their attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

## COUNT 2
## FAILURE TO REASONABLY ACCOMMODATE
## (TRAVEL RACK)

94.     Plaintiffs re-allege and incorporate by reference Paragraphs 1-72 as if fully set forth herein.

95.     MRS. HAUSER is disabled by virtue of a physical impairment which substantially limits one or more of her major life activities, specifically among them:  walking.

96.   MRS. HAUSER has a disability-related need to use and have ready-access to her mobility scooter and automobile in order to have the same opportunity to use and enjoy her dwelling at MARINER POINTE as any non-disabled resident. This necessitates use of and ready access to the mobility scooter travel rack.

97.   MR. HAUSER is a person associated with a person with a disability.

98.   Plaintiffs requested that MARINER POINTE waive its restrictions and allow Plaintiffs to store the travel rack for MRS. HAUSER's mobility scooter with the bicycles and watercraft (kayaks and paddleboards) or on some other Association-designated common area so that both Plaintiffs could reside and enjoy their MARINER POINTE residence.

99.   MARINER POINTE does not dispute MRS. HAUSER's disability or disability-related need for use of and access to her mobility scooter. (See Exhibit 2.)

100.   MARINER POINTE, fully knowing of MRS. HAUSER's disability-related need to use and have ready-access to her mobility scooter and automobile, refused to waive its restrictions and/or policy regarding storing the scooter travel rack.

101.   MARINER POINTE, fully knowing of MRS. HAUSER's disability-related need to use and have ready-access to her mobility scooter, refused without explanation, to allow Plaintiffs to store the scooter travel rack in an Association-designated common area.

102.    MARINER POINTE had actual knowledge of MRS. HAUSER's disability and disability-related need to use and have ready access to her mobility scooter and automobile.

103.    Defendant had a legal obligation to  meaningfully review Plaintiffs' request to store the scooter travel rack with or near the bicycles and watercraft (kayaks and paddleboards) or in some other Association-designated common area could be accommodated, which at the very least would have required speaking with the Plaintiffs rather than flatly denying the storage request without explanation.

104.    Defendant made no effort to engage in a good faith dialogue with either Plaintiff regarding their request for reasonable accommodation of storing the travel rack.

105.    Accommodating MRS. HAUSER's need to have use of and ready access to her mobility scooter and automobile by storing the mobility scooter travel rack in an Association-designated common area would not result in substantial physical damage to the property of others

106.    Accommodating MRS. HAUSER's need to have use of and ready access to her mobility scooter and automobile by storing the mobility scooter travel rack in an Association-designated common area would not pose an undue financial or administrative burden on MARINER POINTE.

107.    Accommodating MRS. HAUSER's need to have use of and ready access to

her mobility scooter and automobile by storing the mobility scooter travel rack in an Association-designated common area would not fundamentally alter the nature of MARINER POINTE's operations.

108.   MARINER POINTE's actions and conduct constitute a conscious and reckless disregard for Plaintiffs' rights, and show total indifference for MRS. HAUSER's disability.

109.   The foregoing conduct and acts of Defendant constitute discrimination against a person with a disability in violation of 42 U.S.C.§ 3604(f)(3)(B), FHA, by failing to and/or by refusing to make reasonable accommodations in its rules, policies, practices, or services, when such accommodations are necessary to afford Plaintiffs an equal opportunity to use and enjoy their dwelling.

110.   The foregoing conduct and acts of Defendant also constitute discrimination against a person living with a person with a disability in further violation of the FHA.

111.   As a result of the Defendant's conduct, Plaintiffs have suffered damages.

112.   The discriminatory conduct and actions of Defendant were intentional, willful, and taken in blatant disregard for the Plaintiffs' rights.

113.   As a direct and proximate result of MARINER POINTE's failure to accommodate, MRS. HAUSER has suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation,

and loss of her right to equal housing opportunities regardless of disability.

114.   As a direct and proximate result of MARINER POINTE's failure to accommodate, MR. HAUSER has also suffered irreparable loss and injury including, but not limited to, loss of his right to equal housing opportunities regardless of his association with a person with a disability.

**WHEREFORE,** Plaintiffs GRAYDON J. "GRADY" HAUSER and LORA SUE HAUSER demand judgment against Defendant, MARINER POINTE CONDOMINIUM ASSOCIATION, INC., declaring that the actions of MARINER POINTE violated, *inter alia*, the Fair Housing Amendments Act by discriminating against a person with a disability and a person associated with a person with a disability, and awarding Plaintiffs compensatory and punitive damages and their attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

### COUNT 3
### <u>ILLEGAL INTIMIDATION AND THREATS OF LIABILITY FOR MARINER POINTE'S ATTORNEYS' FEES</u>
### <u>(SHOCKING OUTLET USE AGREEMENT)</u>

115.   Plaintiffs re-allege and incorporate by reference Paragraphs 1-72 as if fully set forth herein.

116.   Pursuant to 42 U.S.C. §3617, "[i]t is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any

25

other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806 [42 USCS § 3603, 3604, 3605, or 3606]."

117.  On June 14, 2023, Defendant demanded that Plaintiffs' either sign the Association's self-serving and discriminatory Shocking Outlet Use Agreement else "lose their right to park" MRS. HAUSER's medically-necessary mobility scooter "in parking space 642," "permanently and immediately," in addition to subjecting themselves to a lien on their Unit, foreclosure by the Association on their Unit, and paying the Association's attorneys' fees and costs. (Exhibit 3 [Shocking Outlet Use Agreement].)

118.  By threatening Plaintiffs if they did not sign the Shocking Outlet Use Agreement with loss of their right to park MRS. HAUSER's mobility scooter in the Plaintiffs' parking space (and effectively anywhere else in the MARINER POINTE Community), Defendant clearly intended to intimidate Plaintiffs into abandoning their fair housing rights.

119.  By threatening Plaintiffs if they did not sign the Shocking Outlet Use Agreement with loss of their right to park in Guest Parking (effectively anywhere in the MARINER POINTE Community), Defendant clearly intended to intimidate Plaintiffs into abandoning their fair housing rights.

120.  MARINER POINTE  violated 42 U.S.C. § 3617 of the FHA by coercing, intimidating, threatening, and interfering with Plaintiffs in the exercise and

enjoyment of their Fair Housing rights.

121.   The discriminatory conduct of MARINER POINTE was intentional, willful, and taken in disregard for Plaintiffs' rights.

122.   As a direct and proximate result of the Defendant's conduct, MRS. HAUSER has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

123.   As a direct and proximate result of MARINER POINTE's failure to accommodate, MR. HAUSER has also suffered irreparable loss and injury including, but not limited to, loss of his right to equal housing opportunities regardless of his association with a person with a disability.

   **WHEREFORE,** Plaintiffs demands judgment against Defendant, MARINER POINTE CONDOMINIUM ASSOCIATION, INC., declaring that the actions of MARINER POINTE violated, *inter alia*, the Fair Housing Amendments Act by discriminating against a person with a disability and a person associated with a person with a disability, and awarding Plaintiffs' their compensatory damages and attorneys' fees and costs, punitive damages, and any other such relief as this Court deems just and equitable.

**COUNT 4**
**ILLEGAL DISCRIMINATION IN THE TERMS,**
**CONDITIONS, OR PRIVILEGES OF SALE OF A**
**DWELLING**

124.    Plaintiffs re-allege and incorporate by reference Paragraphs 1-72 as if fully set forth herein.

125.    42 U.S.C. § 3604(f)(2) provides that it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of" that person, a person residing in that dwelling or any person associated with that person.

126.    MR. HAUSER is associated with and resides with MRS. HAUSER, a person with a disability, and is therefore a member of a protected class.

127.    MRS. HAUSER relies upon a mobility scooter for disability-related support; by refusing to allow the scooter to be parked in the requested, readily-accessible location or to store the travel rack in a designated common area, MARINER POINTE  will not allow MRS. HAUSER use and ready-access to her mobility scooter and her automobile.

128.    MARINER POINTE residents that do not reside with disabled persons that rely upon mobility assistance scooters have the privilege of ready access to their vehicles.

129.    MARINER POINTE's rules and policies treat residents that live with or are associated with disabled residents who rely on mobility scooters differently than other residents by forcing them to park in guest parking spaces that are available

only on a first come, first serve basis.

130.   MARINER POINTE violated 42 U.S.C. § 3604(f)(2) of the FHA by discriminating against the Plaintiffs in the terms, conditions, or privileges of sale or rental of a dwelling.

131.   The discriminatory conduct of MARINER POINTE was intentional, willful, and taken in disregard for Plaintiffs' rights.

132.   As a direct and proximate result of the Defendant's conduct, MRS. HAUSER has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

133.   As a direct and proximate result of the Defendant's conduct, MR. HAUSER has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of his right to equal housing opportunities regardless of his association with a person with a disability.

**WHEREFORE,** Plaintiffs demands judgment against Defendant, MARINER POINTE CONDOMINIUM ASSOCIATION, INC., declaring that the actions of MARINER POINTE violated, *inter alia*, the Fair Housing Amendments Act by discriminating against a person with a disability and a person associated with a person with a disability, and awarding Plaintiffs' their compensatory damages

and attorneys' fees and costs, punitive damages, and any other such relief as this

Court deems just and equitable

## COUNT 5
## ILLEGAL DISCRIMINATION IN THE TERMS, CONDITIONS, OR PRIVILEGES OF SALE OF A DWELLING (COUNTING THE SCOOTER AS A VEHICLE)

134.    Plaintiffs re-allege and incorporate by reference Paragraphs 1-72 as if fully set forth herein.

135.    42 U.S.C. § 3604(f)(2) provides that it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of" that person, a person residing in that dwelling or any person associated with that person.

136.    MRS. HAUSER is a person with a disability and is therefore a member of a protected class.

137.    MR. HAUSER is associated with and resides with MRS. HAUSER, a person with a disability, and is therefore also a member of a protected class.

138.    Because MRS. HAUSER relies upon a mobility assistance scooter for disability-related support which MARINER POINTE is counting as a "motor vehicle" in its "[o]nly two (2) private passenger vehicles per unit may be parked on the premises" limit, MARINER POINTE is limiting Plaintiffs to one (1) "private passenger vehicle" (automobile). (See Exhibit 15.)

139.   MARINER POINTE residents that do not rely upon mobility scooters, and residents that do not reside with disabled persons that rely upon mobility scooters, have the privilege of having two (2) "private passenger vehicles" (automobiles).

140.   MARINER POINTE's policies/rules/regulations treat residents that rely on mobility scooters, and residents that live with or are associated with disabled residents who rely on mobility scooters, differently than other residents.

141.   MARINER POINTE violated 42 U.S.C. § 3604(f)(2) of the FHA by discriminating against Plaintiffs in the terms, conditions, or privileges of sale or rental of a dwelling.

142.    The discriminatory conduct of MARINER POINTE was intentional, willful, and taken in disregard for Plaintiffs' rights.

143.   As a direct and proximate result of the Defendant's conduct, MRS. HAUSER has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability

144.   As a direct and proximate result of the Defendant's conduct, MR. HAUSER has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of his right to equal housing opportunities regardless of his association with a person with a disability.

**WHEREFORE,** Plaintiffs demands judgment against Defendant, MARINER POINTE CONDOMINIUM ASSOCIATION, INC., declaring that the actions of MARINER POINTE violated, *inter alia*, the Fair Housing Amendments Act by discriminating against a person with a disability and a person associated with a person with a disability, and awarding Plaintiffs' their compensatory damages and attorneys' fees and costs, punitive damages, and any other such relief as this Court deems just and equitable.

**COUNT 6**
**ILLEGAL INTIMIDATION AND THREATS OF**
**TOWING,FINE, LIEN AND LAWSUIT**
**(COUNTING SCOOTER AS A VEHICLE)**

145.    Plaintiffs re-allege and incorporate by reference Paragraphs 1-72 as if fully set forth herein.

146.    Pursuant to 42 U.S.C. §3617, "[i]t is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806 [42 USCS § 3603, 3604, 3605, or 3606]."

147.    On October 2, 2023, Defendant demanded that Plaintiffs' move the scooter and their car else have them towed, in addition to subjecting themselves to a thousand dollars in fines, a lien on their Unit, and a lawsuit. (Exhibit 15 [Violation Letter].)

148.   By threatening Plaintiffs with loss of their right to park their car in the Plaintiffs' parking space (and effectively anywhere else in the MARINER POINTE Community), Defendant clearly intended to intimidate Plaintiffs into abandoning their fair housing rights.

149.   By threatening Plaintiffs if they did not move the scooter and their car with loss of their right to park their car in the MARINER POINTE Community, Defendant clearly intended to intimidate Plaintiffs into abandoning their fair housing rights.

150.   MARINER POINTE  violated 42 U.S.C. § 3617 of the FHA by coercing, intimidating, threatening, and interfering with Plaintiffs in the exercise and enjoyment of their Fair Housing rights.

151.   The discriminatory conduct of MARINER POINTE was intentional, willful, and taken in disregard for Plaintiffs' rights.

152.   As a direct and proximate result of the Defendant's conduct, MRS. HAUSER has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

153.   As a direct and proximate result of MARINER POINTE's failure to accommodate, MR. HAUSER has also suffered irreparable loss and injury including, but not limited to, loss of his right to equal housing opportunities

regardless of his association with a person with a disability.

**WHEREFORE,** Plaintiffs demands judgment against Defendant, MARINER POINTE CONDOMINIUM ASSOCIATION, INC., declaring that the actions of MARINER POINTE violated, *inter alia*, the Fair Housing Amendments Act by discriminating against a person with a disability and a person associated with a person with a disability, and awarding Plaintiffs' their compensatory damages and attorneys' fees and costs, punitive damages, and any other such relief as this Court deems just and equitable

## V.    THIS COURT'S POWER TO GRANT RELIEF

154.    Plaintiffs re-allege and incorporate by reference Paragraphs 1-72 as if fully set forth herein.

155.    Plaintiffs have suffered and incurred irreparable damage, and continue to suffer and incur irreparable damage.

156.    The FHA and Rule 65 of the Federal Rules of Civil Procedure, collectively and singularly, empower this Court to grant a temporary restraining order, preliminary injunctive and permanent injunctive relief, and/or such other relief as the Court may deem appropriate to hold and redress the violations of any provision of law enforced by the FHA.  The Court, in the exercise of its equitable jurisdiction may award financial relief, accommodation directives, policy modification, and restoration of access privileges to  prevent and remedy any

34

violation of any provision of law enforced by the FHA.

## VI.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff LORA SUE HAUSER and Plaintiff GRAYDON J.
"GRADY" HAUSER demand judgment against Defendant, MARINER POINTE
CONDOMINIUM ASSOCIATION, INC., which:

a.      declares that MARINER POINTE's actions violated the FHA by
discriminating against a person with disabilities;

b.      declares that MARINER POINTE's actions violated the FHA by
discriminating against a person associated with a person with disabilities;

c.      enjoins MARINER POINTE from discriminating against Plaintiffs by
denying MRS. HAUSER use or ready access to her mobility scooter by
threating to deny her the right to park her scooter in parking space 642 or
anywhere else in the MARINER POINTE Community, threatening to fine
and place a lien upon the Plaintiffs' Unit, to foreclose upon the Plaintiffs'
Unit, to seek attorneys' fees and costs from Plaintiffs, or otherwise enforcing
its parking rules and policies and instead granting MRS. HAUSER's request
for the reasonable accommodation of her disability-related need for her
mobility scooter by waiving any restriction, policy, or practice that would
prevent her parking the scooter on the outside bumper of Plaintiffs' parking
space dedicated to Unit 642 so long as she is a resident of MARINER

POINTE;

d.     enjoins MARINER POINTE from discriminating against Plaintiffs by denying MRS. HAUSER use or ready access to her mobility scooter by forbidding her the right to store her scooter travel rack in the area designated for bicycles and watercraft (kayaks and paddleboards) or some other common area space in the MARINER POINTE Community or otherwise enforcing its rules, policies, or practices forbidding same and instead granting MRS. HAUSER's request for the reasonable accommodation of her disability-related need for ready access to her mobility scooter by waiving any restriction, policy, or practice that would prevent storing her mobility scooter travel rack  in the area designated for bicycles and watercraft (kayaks and paddleboards) or some other common area space in the MARINER POINTE Community so long as she is a resident of MARINER POINTE;

e.     enjoins MARINER POINTE from discriminating against Plaintiffs by counting MRS. HAUSER's mobility scooter as a "private passenger vehicle" or automobile in MARINER POINTE's "[o]nly TWO (2) private passenger vehicle per unit" limit or otherwise enforcing its rules, policies, regulations or practices such that MARINER POINTE forbids or denies Plaintiffs the right to have two (2) private passenger vehicles (automobiles) in addition to

MRS. HAUSER's scooter in the MARINER POINT Community;

f.      awards Plaintiffs compensatory damages as would fully compensate them for Defendant's discriminatory conduct;

g.      awards Plaintiffs their attorneys' fees and costs incurred in bringing this action to enforce the FHA;

h.      awards Plaintiffs punitive damages sufficient to punish Defendant for its actions that were willful, wanton, and malicious, or in reckless disregard for the Plaintiffs' rights; and

i.      grants any other such relief as this Court deems just and equitable.

## VII.  DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues so triable.

VENZA LAW, PLLC
931 Village Boulevard, #905-322
West Palm Beach, FL 33409
Office: (561) 596-6329
Email: dvenza@venzalawpllc.com


BY: *s/ Denese Venza*
Denese Venza, Esq.
Florida Bar No. 599220
*Counsel for Plaintiffs*

MARCY I. LAHART, P.A.
249 SE Tuscawilla Rd.
Micanopy, FL 32667
Telephone: (352) 224-5699
Facsimile: (888) 400-1464
Email:
marcy@floridaanimallawyer.com


BY: *s/ Marcy I. LaHart*
Marcy I. LaHart, Esq.
Florida Bar No. 0967009
*Counsel for Plaintiffs*